**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: TEAM SYSTEMS INTERNATIONAL, LLC, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bankr. No. 22-10066-CTG |
| | : | |
| | : | |
| ADDY ROAD, LLC, JOHN S. MACIOROWSKI, and DEBORAH EVANS MOTT, | : | Adv. Proc. No. 23-50004-CTG |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 26-179-GBW |
| | : | |
| GEORGE MILLER, solely in his capacity as the Chapter 7 Trustee of the estate of TEAM SYSTEMS INTERNATIONAL, LLC, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM

## I.  INTRODUCTION

This appeal arises in the chapter 7 case of Team Systems International, LLC (the "Debtor") with respect to an adversary proceeding[1] brought by the Chapter 7 Trustee ("Trustee") against various defendants who are owners or affiliates of the Debtor, including Deborah Evans Mott, John S. Maciorowski, and Addy Road LLC (the "Defendants").  The Trustee's complaint asserts, among other things, that prior to the bankruptcy filing, the Debtor fraudulently conveyed assets to the Defendants.  Relevant here, the Trustee obtained a preliminary injunction prohibiting the dissipation of the Defendants' assets during the pendency of the litigation.  The preliminary injunction bars Defendants from selling certain real property.  Notwithstanding that injunction,

---

[1] The docket of the adversary proceeding, captioned *Miller v. Mott, et al.,* Adv. No. 23-50004 (CTG) (the "Adversary Proceeding"), is cited herein as "Adv. D.I. __," and the docket of the chapter 7 case, captioned *In re Team Sys. Int'l, LLC,* No. 22-10066 (CTG), is cited herein as "Bankr. D. Del. __."

Defendants Mott and Maciorowski admit they sold one of the properties specified in the injunction. On February 4, 2026, the Bankruptcy Court issued an order finding Mott and Maciorowski in civil contempt and, among other things, ordered them to escrow an amount equal to the sale proceeds pending trial (Adv. D.I. 476) (the "Contempt Order") for the reasons set forth in its accompanying opinion dated February 4, 2026 (Adv. D.I. 475) (the "Contempt Opinion"). Defendants appealed the Contempt Order and filed an emergency motion for stay pending its appeal (D.I. 3) (the "Emergency Stay Motion"). The Trustee filed an objection to the Emergency Stay Motion along with a cross-motion to dismiss the appeal for lack of jurisdiction (D.I. 8) (the "Motion to Dismiss"). For the reasons set forth herein, the Court will dismiss the appeal for lack of jurisdiction and deny the Emergency Stay Motion both as moot and on its merits. Even assuming the Court had jurisdiction over the appeal, Defendants have not carried their burden of demonstrating that any stay of the Contempt Order is warranted.

## II.   BACKGROUND

In January 2023, the Trustee filed a complaint (Adv. D.I. 1) (the "Complaint") commencing the Adversary Proceeding which seeks, among other things, to avoid and recover "millions of dollars of the debtor's assets transferred" to Defendants and their co-defendants prior to the bankruptcy filing. (Contempt Op. at 3.) The Trustee also sought a preliminary injunction. (*See id.*) On January 27, 2023, following an evidentiary hearing, the Bankruptcy Court entered the preliminary injunction (Adv. D.I. 25) (the "Preliminary Injunction"). The Bankruptcy Court determined that the Trustee "presented evidence detailing that the badges of fraud were 'amply present' in the case, indicating a strong likelihood of success on the fraudulent transfer claims." (Contempt Op. at 3-4 (quoting *In re Team Sys. Int'l, LLC*, 2023 WL 1428572, *10 (Bankr. D. Del. Jan. 31, 2023)) The Bankruptcy Court further found the Trustee had "demonstrated that the 'factual circumstances [of the case] provide cause for concern that without an injunction

1

[prohibiting] such transfers, defendants may move or conceal assets.'" (*Id.* at 4 (quoting *In re Team Sys. Int'l, LLC*, 2023 WL 1428572, at *12.). The Preliminary Injunction expressly prohibited the sale of three "Real Properties." Specifically, the Preliminary Injunction provided that: (i) "[Defendants], and their agents and assigns, are each prohibited and enjoined from selling, assigning, transferring, encumbering, mortgaging, or otherwise disposing of any portion or all of their respective interests in the *following Real Properties … the Blue Springs Property, which is located at 1509 SW Conch Circle, Blue Springs* (also known as Lees Summit), *Missouri 64064.* (Preliminary Injunction ¶ 2); and (ii) "[p]ending the entry of the Second Order,[2] each of the [Defendants] are prohibited and enjoined from using, selling, transferring, assigning, encumbering, mortgaging, *or otherwise disposing of any cash or other assets*, except to the extent necessary to pay ordinary household and living expenses or ordinary business expenses, as applicable" (*id.* ¶ 5).

In December 2025, the Trustee learned Defendants Mott and Maciorowski had sold the Blue Springs Property. Counsel for the Defendants acknowledges, and the record establishes, that the Defendants in fact sold the Blue Springs Property. The Trustee filed a motion (Adv. D.I. 450) (the "Contempt Motion") seeking to enforce the Preliminary Injunction and to hold Mott and Maciorowski in civil contempt. Defendants opposed the Contempt Motion (Bankr. D.I. 674, 699), arguing, *inter alia,* that: (1) the Preliminary Injunction allowed payment of normal living and business expenses (*see id.* at 8-12); (2) a typographical error in the address of the Blue Springs Property created "foundational ambiguity" in the Preliminary Injunction (*id.* at 10); (3) that by

---

[2] The Preliminary Injunction further required Defendants to "full disclosure of all their assets and Liabilities" (Preliminary Injunction ¶ 3) and provided that "[w]ithin thirty (30) days of the Trustee's receipt of the accountings … , the parties shall submit to the Court one or more proposed forms of order (the "Second Order") regarding the Trustee's request for a preliminary injunction with respect to cash allegedly transferred by the Debtor to the [] Defendants." (*Id.* ¶ 4.) It is undisputed that no "Second Order" was entered.

virtue of a June 2024 letter (D.I. 3-1) (the "June 2024 Letter"), the Trustee was "on notice … that the Defendants construed the [Preliminary Injunction] to allow them to sell assets or use funds to pay living expenses, including attorneys' fees" (*see id.* at 12); (4) that the badges of fraud which formed the predicate for the Preliminary Injunction were inadmissible, misleading, presented in bad faith, and had since been "removed"—*i.e.*, disproven during discovery (*see id.* at 2-8, 12-15); and (5) that the Preliminary Injunction was overly broad as to assets for which the Trustee has no possible legal claim (*see id.* at 16-18; Bankr. D.I. 699 at 5.). For all of these various reasons, Defendants argued that they should not be held in contempt of the Preliminary Injunction and also that it should be vacated (*see* Bankr. D.I. 674 at 16-18).

On January 23, 2026, the Bankruptcy Court held an evidentiary hearing on the Contempt Motion. (D.I. 8-4 (the "1/23/26 Tr.")) On February 4, 2026, the Bankruptcy Court issued the Contempt Opinion and Contempt Order, rejecting each of Defendants' arguments. In determining whether a finding that Defendants were in civil contempt was appropriate, the Bankruptcy Court carefully considered whether the Preliminary Injunction was ambiguous. "[W]here there are genuine ambiguities in a court order, a party should not be held in contempt for acting in a manner that could fairly be described as consistent with the order, even if a court later decides that the better reading of the order is to prohibit the conduct." (Contempt Op. at 5.) The Bankruptcy Court found the Preliminary Injunction was not ambiguous, however, as paragraph 2 of the Preliminary Injunction "flatly enjoined the disposition of the three specific properties," including the Blue Springs Property that Defendants sold. (*Id.* at 6.) While Defendants attempted to rely on language in paragraph 5 of the Preliminary Injunction that allowed Defendants to use "cash or *other assets*. . . necessary to pay ordinary household and living expenses or ordinary business expenses," that exception does not apply to the *three specific properties* enjoined under paragraph 2 of the Preliminary Injunction. (*See id.* at 6-7.)

3

The Bankruptcy Court also rejected Defendants' argument that a scrivener's error in the Preliminary Injunction (two numbers in the street address were transposed as 1509 instead of 1059) created an ambiguity, as it is undisputed that Defendants only owned one property in Jefferson County, Missouri—the property they sold. (*See id.* at 7-8.)

The Bankruptcy Court further rejected Defendants' various arguments that the properties in question were purchased with their own funds, not those of the Debtor, and that the Preliminary Injunction therefore lacked predicate, was overly broad, or was otherwise somehow unenforceable. (*See* Bankr. D.I. 699 at 5.) As the Bankruptcy Court explained, Defendant's arguments are misplaced. "The point of the pre-judgment asset freeze was to ensure that the trustee could execute on any judgment it might obtain in the underlying lawsuit. The source of the funds used to purchase the assets that are frozen is therefore immaterial." (*See* Contempt Op. at 8 n.20.)

On February 4, 2026, the Bankruptcy Court issued the Contempt Order, which, *inter alia,* imposed on the Defendnats heightened financial reporting requirements, lifted a prior stay of the Adversary Proceeding it previously entered so that the trial might proceed in 2026, and required Defendants to pay the value received from the sale of the Blue Springs Property into escrow. (*See* Contempt Op. at 8-10; Contempt Order at 2-3.) On February 11, 2026, the Bankruptcy Court denied Defendants' motion for stay of the Contempt Order pending appeal, but granted a brief additional stay of the deadlines contained in the Contempt Order to allow Defendants to seek relief on appeal. (Adv. D.I. 485.)

On February 17, 2026, Defendants timely appealed the Contempt Order. (D.I. 1.) On February 19, 2026, Defendants filed the Emergency Stay Motion. (D.I. 3.) On February 20, 2026, this Court issued an oral order (1) temporarily staying the deadlines for compliance with the Contempt Order pending its decision on the Emergency Stay Motion, and (2) setting an expedited

4

briefing schedule on the Emergency Stay Motion (D.I. 6) (the "Temporary Stay Order").

On February 26, 2026, the Trustee filed his Objections to the Emergency Stay Motion

together with a cross-motion to dismiss the appeal for lack of jurisdiction (D.I. 8) (the "Cross-

Motion to Dismiss"). On March 4, 2026, Defendants filed their reply in further support of the

Emergency Stay Motion and their opposition to the Trustee's Cross-Motion to Dismiss the appeal.

(D.I. 11.)

## III. JURISDICTION

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158.

District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and

decrees." 28 U.S.C. § 158(a)(1).

The parties dispute whether the Contempt Order is a final, appealable order such that this

Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). A party to an action lacks

the right to appeal a civil contempt order "except in connection with an appeal from a final

judgment or decree." *In re BYJU's Alpha, Inc.,* 2025 WL 947725, at *6 (D. Del. Mar. 28, 2025)

(citing *Fox v. Capital Co.,* 299 U.S. 105, 108 (1936)). "For civil contempt orders, the rule is

settled that, when directed against *parties,* such orders are interlocutory and unreviewable except

incident to an appeal from a judgment otherwise appealable." *Halderman v Pennhurst State Sch.*

*& Hosp.,* 673 F.2d 628, 636 (3d Cir. 1982) (citing cases) (emphasis added). The purpose of this

rule is to prevent "perpetual relitigation" and ensure "the finality of judgments of both appellate

and trial courts." *Id.* at 637. Defendants Mott and Maciorowski[3] are each parties to the Adversary

---

[3] Addy Road LLC ("Addy Road") is also listed as an appellant. However, the Bankruptcy Court did not find Addy Road in contempt; it is mentioned only in one provision which merely continues the Preliminary Injunction's prohibition against sale or transfer of the remaining Real Properties— a prohibition as to which it was already subject. (Contempt Order ¶ 6.) Addy Road is not a "person aggrieved" by the Contempt Order and lacks standing to appeal. *In re Imerys Talc Am., Inc.,* 38 F.4th 361, 370–71 (3d Cir. 2022) ("[S]tanding in bankruptcy appeals has been limited to

Proceeding in which the Contempt Order was entered, and they do not argue that the Contempt Order is incident to an appeal from a judgment otherwise appealable. Thus, Defendants have "no immediate right to appeal" from the Bankruptcy Court's civil Contempt Order. *DeMasi v. Weiss*, 669 F.2d 114, 122-23 (3d Cir. 1982).

Defendants posit that "[c]ivil contempt orders imposing sanctions are typically treated as final and appealable as of right under § 158(a)(1) if they resolve a discrete dispute." (D.I. 11 at 5.) None of the cases cited by Defendants support its proposition that a civil contempt order issued in an ongoing adversary proceeding is immediately appealable. *See Taggart v. Lorenzen*, 587 U.S. 554, 560-62 (2019) (determining the appropriate standard for civil contempt in the context of a violation of a discharge order at the conclusion of a bankruptcy proceeding); *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997) (appeal from an order finding party in violation of a post-confirmation injunction); *In re Markus*, 78 F.4th 554, 570 n.4 (2d Cir. 2023) (not examining jurisdiction and noting earlier appeals of the order imposing monetary sanctions for failure to comply with discovery obligations "were dismissed for lack of appellate jurisdiction … because the sanctions had not yet been conclusively determined and reduced to a sum certain.") (internal quotations omitted). In fact, the case cited in Defendant's reply in support of its jurisdictional argument (D.I. 11 at 15) reached precisely the opposite conclusion. *See In re Morrell*, 880 F.2d 855, 856 (5th Cir. 1989) (holding district court lacked jurisdiction to hear appeal

---

person[s] aggrieved" and "parties meet that standard only when a contested order diminishes their property, increases their burdens, or impairs their rights.") (internal quotations omitted). Defendants argue "Addy Road LLC was not held in contempt, but is covered by a continuing absolute property freeze that exceeds the scope of the Bankruptcy Court's jurisdiction and authority…" (D.I. 11 at 2 n.2). Defendants further argue that Addy Road has standing because "the Contempt Order indirectly impairs its rights in enjoined properties and related assets, increasing its burdens in the adversary proceeding." (*Id.* at 15.) Even assuming Defendants are correct, as a named party to the Adversary Proceeding, Addy Road has no immediate right to appeal the civil Contempt Order for the reasons applicable to the other Defendants.

6

from bankruptcy court order requiring bank to turn over debtor's funds that had been subject of administrative freeze, as order was not final as bankruptcy court specifically declined to award damages). More importantly, however, the Contempt Order does not resolve any discrete dispute. Rather, the Contempt Order: (1) orders the deposit of proceeds from the sale of the Blue Springs Property pending the further order of the Bankruptcy Court; (2) vacates a prior order staying the Adversary Proceeding so that it may proceed; and (3) imposes updated and ongoing financial disclosure requirements. (*See* Contempt Order at ¶¶ 2-4). Defendants do not explain how any of these provisions "resolve[s] a discrete dispute."

As the Bankruptcy Court explained, the only relief that depended on its contempt finding was the direction to pay the sale proceeds into escrow. (*See* Contempt Op. at 10.) The requirement that Defendants purge their contempt by escrowing an amount equal to the sale proceeds is not a final order. As the Trustee points out, the decision in *S.E.C. v. Kirkland*, 533 F.3d 1323 (11th Cir. 2008) is instructive. In that case, the district court entered a civil contempt order and a remedial sanction against the defendant for violating an earlier preliminary injunction. *Id.* at 1323-24. The remedial sanction required defendant to repay by a certain date checks that were issued to defendant in violation of an asset freeze. *Id.* at 1324-25. The Eleventh Circuit held the order was interlocutory and dismissed the appeal. *Id.* at 1325.

The remaining relief implemented by the Contempt Order in this action did not depend on a contempt finding and did not constitute a final order. An order granting or denying a stay of litigation is not a final order and is not appealable without leave of Court. *See Mott v. Miller*, 2025 WL 1474826, at *8-9 (D. Del. May 22, 2025) (dismissing a prior interlocutory appeal of a stay order). The reporting requirements in the Contempt Order are also not appealable at this time because, although Defendants assert that the reporting requirements "risk their Fifth Amendment rights" (D.I. 3 at 7), Defendants have not properly invoked their Fifth Amendment right and have

7

not provided the Bankruptcy Court an opportunity to rule on any such invocation. Defendants are required to assert the Fifth Amendment with respect to each question to which they assert the Fifth Amendment applies. *See National Life Ins. Co. v. Hartford Acc. and Indem. Co.,* 615 F.2d 595 (3d Cir. 1980) ("a witness in civil proceeding may not invoke a blanket [F]ifth [A]mendment privilege [against self-incrimination] prior to the propounding of questions."). The Court agrees that Defendants have made only a general assertion that "compliance with [the Contempt Order] would implicate their rights against self-incrimination under the Fifth Amendment." (Contempt Op. at 9 n.24) As the Bankruptcy Court noted, it may "consider any such issue in the event defendants invoke the Fifth Amendment as a basis not to comply with the terms of this Order." (*Id.*) Because Defendants have neither properly invoked the Fifth Amendment nor permitted the Bankruptcy Court to rule on that issue, the reporting requirements in the Contempt Order do not resolve a discrete issue, and Defendants' challenge is premature.

Based on the foregoing, Defendants should have sought leave to appeal under 28 U.S.C. § 158(a)(3). Defendants failed to do so mentioning the requirements only in their reply in support of the Emergency Stay Motion, and arguing solely that immediate appeal will advance the ultimate termination of the litigation. (*See* D.I. 11 at 12.). Where, as here, Defendants failed to seek leave to appeal an interlocutory order, Bankruptcy Rule 8004(d) provides that the Court "may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it." Fed. R. Bankr. P. 8004(d). Granting leave is not warranted under the requirements of 28 U.S.C. § 1292(b).[4] The Contempt Order does not involve a controlling

---

[4] In determining whether to grant leave to appeal an interlocutory order, courts in this Circuit borrow the standard in 28 U.S.C. § 1292(b) governing appeals of interlocutory orders to the court of appeals. *In re F-Squared Inv. Mgmt. LLC,* 2019 WL 1417464, at *6 (D. Del. Mar. 29, 2019). Interlocutory appeals under Section 1292(b) are appropriate only where the order (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation.

8

question of law as to which there is substantial ground for a difference of opinion. *In re Culp*, 550 B.R. 683, 694 (D. Del. 2015). Rather, a trial court's "decision on a motion for contempt" is reviewed "for abuse of discretion." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). This appeal involves the Bankruptcy Court's interpretation and enforcement of its own order and the exercise of its discretion in crafting an appropriate remedial sanction to address a violation in the context of an ongoing adversary proceeding. The appeal therefore involves case-specific facts and circumstances which render leave to appeal inappropriate. *See, e.g., Oliner v. Kontrabecki*, 305 B.R. 510, 522 (N.D. Cal. 2004), *aff'd*, 158 Fed. Appx. 1 (9th Cir. 2005) (denying leave to appeal bankruptcy court's coercive civil contempt order).

## IV.    STAY OF THE CONTEMPT ORDER PENDING APPEAL IS UNWARRANTED

Even assuming the Court had jurisdiction over the appeal, Defendants have failed to show that a stay of the Contempt Order pending appeal is warranted here. "The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). A stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). The movant bears the burden of establishing that imposition of a stay is warranted. *Id.* In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

*In re Culp*, 550 B.R. at 694 (citing 28 U.S.C. § 1292(b) and *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)). Even where these elements are met, an interlocutory appeal under Section 1292(b) should be denied unless "'exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *In re NeuroproteXeon, Inc.*, 2021 WL 3207167, at *6 (D. Del. July 29, 2021) (quoting *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)).

9

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* at 571 (cleaned up) (internal quotations and citations omitted) (emphasis in original).

## A.    Likelihood of Success on the Merits

Defendants' main arguments on appeal are that the Preliminary Injunction was ambiguous or otherwise unlawful.

With respect to Defendants' first argument, there is not a likelihood of success with respect to Defendants' arguments, as the purported ambiguities of the Preliminary Injunction are belied by its clear language. Paragraph 2 of the Preliminary Injunction is a clear prohibition on sale of three specific properties, which include the Blue Springs Property: "Defendants … are each prohibited and enjoined from selling, assigning, transferring, encumbering, mortgaging, or otherwise disposing of any portion or all of their respective interests in the following Real Properties: … the Blue Springs Property, which is located at 1509 SW Conch Circle, Blue Springs (also known as Lees Summit), Missouri 64064." (Preliminary Injunction ¶ 2.) Based on this clear language, it is difficult to make the argument that Defendants' sale of the Blue Springs Property, without any

10

request for guidance from the Bankruptcy Court, is anything other than willful disobedience of a court order.

The Court agrees with the Trustee that Defendants' reliance on paragraph 5 of the Preliminary Injunction is unlikely to succeed on the merits for several reasons. Defendants will have to show that the language created a "fair ground of doubt" regarding whether the conduct would comport with the Preliminary Injunction. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). As the Bankruptcy Court explained, "[t]he carveout" in paragraph 5 "is applicable only to 'cash and other assets,' not the three properties specifically identified in paragraph two." (Contempt Op. at 7 (quoting Preliminary Injunction).) Defendants further failed to prove it was "necessary" to sell the Blue Springs Property "to pay ordinary household and living expenses." (Preliminary Injunction ¶ 5.) At the hearing on the Contempt Motion, the Trustee proffered evidence showing Mott and Maciorowski had other assets. (1/23/26 Tr. at 85:14-21) (stating in part that the "declarations identify cash and other assets that is not subject to the injunction, including another parcel of real property in the State of Virginia and other personal property."). Thus, Defendants have not shown that their reliance on paragraph 5 is likely to succeed on appeal.

Defendants' reliance on the transposition of numbers in the street address of the Blue Springs Property (1509 instead of 1059) rendered the Preliminary Injunction ambiguous is also unlikely to succeed, as it is undisputed that Defendants had only one property in Jackson County, Missouri—the property they sold. Defendants' reliance on the June 2024 letter (D.I. 3-1) is also unlikely to succeed, as Defendants' good faith is not a defense to civil contempt. *See Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). Defendants are not free to ignore court orders with which they disagree. *See Celotex v. Edwards*, 514 U.S. 300, 313 (1995).

Finally, Defendants cite to the Preliminary Injunction's mention of a "Second Order" that was never issued. Defendants cite the Bankruptcy Court's inquiry at the April 12, 2023 hearing

11

(Adv. D.I. 55 ("4/12/23 Tr.") at 22-23)[5] as to whether the form of Preliminary Injunction would "preclude the possibility that defendants" could ask the Bankruptcy Court for access to funds for their defense. As no such request by Defendants was ever made, and no such "Second Order" was ever entered, and the Preliminary Injunction remained the operative order, it is unlikely that Defendants will prevail on appeal. The Bankruptcy Court's colloquy with counsel cannot be read as some form of separate authorization for the sale of the enjoined assets.

The remainder of Defendants' Emergency Stay Motion argues that the Preliminary Injunction was unlawful in the first place. The Court finds those arguments unlikely to succeed for the reasons set forth in the Contempt Opinion and the Bankruptcy Court's January 31, 2023 Memorandum Opinion. *See Team Sys. Int'l*, 2023 WL 1428572, at *7-9 (rejecting Defendants' argument that the bankruptcy court lacked authority to enter the Preliminary Injunction); *id.* at *10-13 (rejecting Defendants' argument that the Trustee was not entitled to the Preliminary Injunction). At any point, Defendants could have sought clarification or relief from the

---

[5]Defendants cite the following portion of the April 12, 2023 transcript:

> COURT: "I am aware that there does come a point at which, well, certainly in criminal cases and perhaps in civil cases, as well, in which freezing assets runs up against a defendant's sort of due process rights to present its own defense and that there ought to be some mechanism to see to it that the defendant has access to funds to present a defense.
>
> Does your form of order preclude the possibility that the defendants could come in and say, Hang on, Your Honor, I need this amount of money in order to -- access to these funds in order to have counsel to defend myself?"
>
> MR HALL: ... I don't believe there's anything in our order that would preclude any party from seeking relief ...

(4/12/23 Tr. at 22-23.)

12

Preliminary Injunction from the Bankruptcy Court. Instead, Defendants sold property in direct contravention of the Bankruptcy Court's Order.

**B.  Irreparable Harm in Absence of a Stay**

Defendants assert that, absent a stay, they will be deprived of "funds essential for living expenses, legal defense, and other necessities." (D.I. 3 at 21.) Defendants failed, however, to present any evidence of that at the hearing on the Contempt Motion (*see generally* 1/23/26 Tr. at 82-127) and further failed to file with this Court "affidavits or other sworn statements" regarding the purported irreparable harm as required by Bankruptcy Rule 8007(b)(3)(B). Rather, Defendants rely on statements of counsel, which are not evidence and are not sufficient. *In re Revel AC*, 802 F.3d at 572 ("Absent some sort of declaration or other evidence in the record that a stay would cause substantial harm, the harm to Revel was at best speculative."). Moreover, the statements of Defendants' counsel are contradicted by the declarations of Mott and Maciorowski proffered at the January 23, 2026 hearing to show Mott and Maciorowski had assets. (1/23/26 Tr. at 85:18-21.) Defendants have failed to prove any actual and imminent harm or that irreparable harm is likely.

Having failed to carry their burden of establishing either a likelihood of success on appeal or irreparable harm in absence of a stay, no further consideration of the Emergency Stay Motion is required. *In re Revel AC*, 802 F.3d at 571 ("If the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.") (cleaned up). Defendants have further failed to establish that exceptional circumstances "justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry.*, 96 B.R. at 472-73.

## V. CONCLUSION

For the reasons set forth herein, the Court lacks jurisdiction over Defendants' appeal of the Contempt Order. Accordingly, the appeal will be dismissed. Even assuming the Court had jurisdiction over the appeal, Defendants have failed to carry their burden of showing a likelihood of success on the appeal of the Contempt Order or irreparable harm in absence of a stay. The Court will issue a separate Order consistent with this Memorandum.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

14